Ms. Remke, you may proceed. This is Lavertis Stewart v. Wexford Health. Thank you. May it please the court, my name is Rachel Remke, and together with my co-counsel Fred Sperling and Max Heckendorn, we represent the appellant Lavertis Stewart in this case. First of all, this case is not about whether wearing the black box is per se unconstitutional, or whether Mr. Stewart suffered occasional or minor discomfort while wearing it. This case is instead about the excruciating pain that Mr. Stewart suffered because of his painful preexisting conditions when he was forced to wear the black box. He endured- Before you even begin, forgive me, but do you agree that injunctive relief that was requested from defendant Steele is now moot? Your Honor, we don't agree that it's moot, the injunctive relief, and here's why. Mr. Stewart has not been released from prison. He's instead been released onto home confinement, and as even the state concedes, or the IDOC concedes, he can be reincarcerated for things, some of which, like losing his host site, aren't in his control. If he is reincarcerated, then he'll be subjected to wearing the black box again because of the number of serious health conditions he has, and this medical treatment he has to suffer, or has to receive for those conditions, and so we don't believe that the injunctive relief is unnecessary because there's a reasonable chance that he would still be subjected to wearing the black box if he's reincarcerated. If that answers Your Honor's questions, then I will go back to the beginning of my argument. Well, maybe our other two lawyers will weigh in. Thanks. Thank you. As I was saying, Mr. Stewart endured the pain that he suffered from wearing the black box, for hours at a time, on at least 23 occasions, just to receive medical treatment for the serious medical conditions that he suffers, but Mr. Stewart presented more than just evidence of the extreme pain that he suffered while wearing the black box before the district court. First, he offered evidence of his objectively serious and painful preexisting shoulder, wrist, and elbow conditions. Second, he presented testimony from a doctor that these conditions can cause pain while wearing the black box. And third, he presented evidence that the defendants knew he reported extreme pain from wearing the black box over and over and over again, despite treatment. Okay, so does he claim that his conditions were permanently exacerbated by the application of the black box, or just that the black box caused him excessive pain during and after the application? I believe his claim, Your Honor, is during and after the black box, rather than any type of additional permanent injury as a result of wearing the black box. That the defendants never altered course from forcing him to wear the black box on his medical writs is evidence from which a reasonable jury could determine that they were deliberately indifferent to his Eighth Amendment rights, and thus the grant of summary judgment in favor of the defendants by the district court was error, and we'd ask that you reverse that. First, I think it's important to understand how the black box works. It is exactly what it looks like. I have one here. It sounds like a black box. An inmate is placed in this. It covers the chain that connects the handcuffs. They're placed in a twisted wrist position with the palm up and the palm down with the black box in between. And it's that position that they are repeatedly, or that they're placed in for the entirety of a medical writ, which for Mr. Stewart lasted for hours at a time. And it was that condition or that position that he was in that caused him the extreme pain because of his preexisting shoulder, wrist and elbow conditions. Mr. Stewart presented evidence from which a reasonable jury could find that he faced a serious risk of harm from wearing the black box. As I mentioned, he testified that he was in extreme pain while he was wearing the black box. And even though cases like Roe versus Gibson, which we said in our brief, illustrate that that testimony is really all that's necessary to create a question of fact. Mr. Stewart, as I mentioned, presented more. He presented evidence of his serious preexisting elbow, shoulder and wrist conditions, along with the testimony of a doctor that those conditions could cause pain while he was wearing it. From that evidence, a reasonable jury could find that there was a serious risk of harm that he faced from wearing the black box for hours at a time when he received other medical treatment. Would you agree that your case is made more difficult by the fact that Mr. Stewart's medical needs are being weighed, sorry, against a safety measure? Your Honor, it is true that in this case, the court and the jury, if the court were to allow it to proceed to a jury, would have to weigh the competing interests of his Eighth Amendment rights and the safety issue. But in this case, there are other reasonable alternatives that were in fact utilized that would protect the safety of the public that wouldn't have caused Mr. Stewart the extreme pain that he suffered from wearing the black box. Also, there's no evidence in the record that Mr. Stewart himself presents a significant safety risk. But those interests are interests that we think the jury should have been or should be entitled to resolve. And because there is a question of fact as to whether Mr. Stewart's Eighth Amendment rights were violated despite the security concerns that arise from the black box. Turning to Dr. Misrobian, because I see my time is running short in the claim against him. Mr. Stewart presented evidence from which a reasonable jury could find that Dr. Misrobian was deliberately indifferent to the risk of harm that he faced from wearing the black box. Dr. Misrobian knew of his preexisting shoulder conditions. He knew that he was experiencing extreme pain from wearing the black box. And even though he provided medical treatment to Mr. Stewart by the summer of 2009, he knew that medical treatment wasn't working. Mr. Stewart was continuing to complain of extreme pain while wearing the black box. Dr. Misrobian's refusal to change course of treatment, even though he knew the treatment that he was providing wasn't working in cases like Barry versus Peterman, that is sufficient evidence to create a question of fact to allow a reasonable jury to find that he was deliberately indifferent to Mr. Stewart's Eighth Amendment rights. I'll address the claims against Wexford next. Mr. Stewart believes that he presented evidence from which a reasonable jury could find that Wexford was deliberately indifferent to his serious risk of harm. And that was in two different ways, by evidence of a widespread custom and practice and by a policy of inaction. Mr. Stewart presented evidence that multiple Wexford providers knew of Mr. Stewart's objectively serious medical conditions and the extreme pain he suffered from wearing the black box. He also presented evidence that they knew that he reported continuing to suffer from that extreme pain. And yet Wexford providers continued to deny Mr. Stewart a black box exemption over eight years, multiple providers on at least 23 occasions. This is a pattern of repeated behavior that shows or that can be evidence of a de facto policy to deny exemptions that Wexford had to have known about, sufficient to create a question of fact and allow a reasonable jury- Ms. Remke, if I could interject here, we don't have any expert testimony in this case to the effect that denying a black box exemption violates the standard of care. That's correct, Your Honor. That's correct. Right, and that would be necessary to prove a medical negligence case. And of course the standard is much higher for an Eighth Amendment claim. So if we don't have any evidence upon which a jury could conclude that the denial of an exemption in your client's circumstances violates the standard of care for medical negligence, how can this be adequate as a deliberate indifference case? Your Honor, while we don't have expert evidence that Dr. Misrobian or any of the other providers violated the standard of care, we don't believe that's necessary. What we have is a pattern of refusing to change course of treatment, even though a medical provider knows that treatment isn't working. And in cases like Barry, and where there was no expert testimony, that refusal to change course in certain circumstances can be enough. And we suggest and submit to the court that in this case, that is enough here to create a question of facts from which a reasonable jury could find that the defendants were deliberately indifferent to Mr. Stewart. I have just a few minutes to address Mr. Stewart's claims against a defendant Steele. Individual capacity claims, we think viewing the evidence in the light most favorable to Mr. Stewart, there's evidence that over the course of six months, Mr. Steele knew from a conversation he had with Mr. Stewart, four letters and a grievance, that Mr. Stewart's claims of pain weren't being addressed. And because of that knowledge, he was required to do something. The fact that he didn't do anything is sufficient evidence to create a question of fact related to deliberate indifference and we'd ask that this court reverse the trial court's grant of summary judgment on all of the defendants behalf. And I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Ms. Stewart. Morning counsel and may it please the court. My name is Lindsay Stewart and I represent Wexford Health Sources and Dr. Ms. Robian, who asked that summary judgment be affirmed in their favor. As counsel for Mr. Stewart has acknowledged, this is not a typical case of deliberate indifference to medical needs. Mr. Stewart has not alleged that the defendants failed to provide him with medical treatment for his various medical conditions. Instead, Stewart is claiming that his constitutional rights were violated because he did not always receive a special medical exemption to a security rule. In Estelle versus Gamble, our Supreme Court explained that the eighth amendment prohibits deliberate indifference to medical needs of prisoners because the pain and suffering associated with the denial of medical care serves no penological purpose. This case presents a slightly different issue. Everyone in this case agrees that the black box does serve a penological purpose. And because of the important security purpose of the black box, an exemption can only be provided in the limited circumstance of medical necessity. This case is not like Berry versus Peterman, repeatedly cited by Mr. Stewart's counsel where a physician refused to refer an inmate to a dentist for tooth pain, which this court determined prolonged his pain without penological justification. Those facts are in a posit here. This case does not involve purely medical treatment decisions. Wexford and its employees have consistently testified in this case that the determination of whether a black box exemption can be granted or is medically necessary is made on a case-by-case basis in the clinical judgment of the provider at the time of his or her evaluation. And the record demonstrates this procedure was followed with respect to Mr. Stewart by Dr. Misrobian and all of the other Wexford providers. The record does not support plaintiff's contention that the judgment made by these providers was criminally reckless. First, as the court has pointed out, Mr. Stewart has presented no medical evidence to support his contention that the black box aggravates his shoulder conditions and carpal tunnel syndrome. Instead, the evidence in the case, as explained by his multiple medical providers, is that while wearing a black box, an inmate's shoulders are maintained in a neutral, natural, downward position. In fact, the evidence is that Mr. Stewart's shoulders would be maintained in essentially the same position no matter what kind of restraints he wears. Is it possible that that neutral armed position that's imposed by the black box doesn't in and of itself harm Mr. Stewart, but rather the inability to change positions over an eight or 11-hour day or whatever amount of time that eventually causes the stiffness and the pain? I believe the testimony in this case is that, I mean, the black box, whether the black box restraints are used or leather restraints are used, the shoulders are maintained in the same position and they can be moved around a bit. However, Mr. Stewart testified that the types of maneuvers and positions that aggravate his shoulder condition are reaching overhead or heavy lifting, and those types of maneuvers or positional changes are prohibited by the black box. He would not be engaging in those kinds of maneuvers. The evidence is also that with respect to Mr. Stewart's carpal tunnel syndrome, the wrists aren't flexed or extended in a manner that puts pressure on the median nerve, which is the nerve that would be exacerbated by and inflame his carpal tunnel syndrome. So Stewart hasn't offered any medical evidence to rebut the testimony that the black box would not aggravate these conditions, and the record does not support an inference that the Wexford providers, including Dr. Misrobian, consciously disregarded Mr. Stewart's complaints. In fact, the testimony in this case is that at different points in time, Stewart's providers, including Dr. Misrobian, Dr. Chamberlain, Dr. Wall, Dr. Funk, they all put on the black box in order to better assess how the shoulders, elbows, wrists are maintained, how it affects the joints and the muscles, and they determined in their judgment that the black box would not exacerbate Stewart's medical conditions. But how long did they stay in there? I mean, how long did they stay with the black box? They were for a period of time, certainly not eight hours. However, it's undisputed that regardless of, that Mr. Stewart would necessarily be required to wear some kind of restraints while on a medical rep. And the record also demonstrates that Mr. Stewart, each time he requested a black box exemption, he was evaluated by a medical provider, he was prescribed pain medication, and his complaints were considered in the context of his condition and clinical exam. The fact that different providers came to different conclusions about his condition at different points in time is evidence of their exercise of clinical judgment, not deliberate indifference. In order to succeed on his Monell claim, Stewart has to point to evidence of a practice of denying black box exemptions so widespread and well-settled it constitutes custom and usage with the force of law. Stewart has pointed to only his own experience of having his request for a black box exemption denied on certain occasions as evidence of Wexford's widespread policy. However, he conveniently ignores the multiple occasions where Wexford providers did grant him a black box exemption based on their clinical judgment and his exam on that date. Stewart can't cherry pick the evidence to contend each time his request was denied, it's evidence of some widespread practice and ignore the multiple occasions where it was determined that Wexford providers, by Wexford providers, that his clinical condition warranted exemption. After the department convened that special in-service conference to use black box exemptions, was that recommendation ever reduced to writing? The record shows that there wasn't a special in-service conducted by the IDOC at Stateville Correctional Facility, which is a different correctional facility than the one where Stewart was housed. And at that point in time, the emphasis was made on limiting exemptions to medical necessity. I believe that the explanation given by the multiple providers is that the best way to determine whether a condition is medically necessary is through the clinical judgment of a provider. The testimony in this case is that there is a wide range of conditions that may or may not require a black box at different points in time. And it is difficult to imagine how any policy at bottom would not require an examination by a physician and clinical judgment of medical necessity. I see that my time is up. All right, thank you very much. Ms. Citrin. Ms. Citrin, we can't hear you. No. Do you have something to say? Okay, can you hear me now? Yes. Okay, thank you. Good morning, your honors. Counsel, may it please the court. My name is Chaya Citrin, Assistant Attorney General on behalf of the State Defendant Appellee, Wayne Steele, a former assistant warden at Dixon Correctional Center. I'd like to address first the individual capacity claim against Steele and then the official capacity claim. In the individual capacity claim, Stewart claims that Steele failed to intervene when Stewart complained that the prison medical director, Dr. Chamberlain, denied him a black box exemption. The district court properly granted summary judgment on this claim on two grounds. The district court concluded that a jury could not reasonably find an underlying constitutional deprivation by Dr. Chamberlain nor that Steele turned a blind eye to any such deprivation. Regarding that first ground, the lack of an underlying deprivation, there's no real dispute that a jury would have to find on the record that Dr. Chamberlain exercised his professional medical judgment when he initially denied Stewart an exemption. In his reply brief, Stewart rightly concedes that a failure to intervene claim requires proof of an underlying deprivation of a plaintiff's rights. But he seems to argue that such proof is unnecessary here to the extent that Steele himself should have granted him a black box exemption. But the district court found, and Stewart also concedes in his opening brief, that a black box exemption could be provided only by a medical professional and that Steele lacked authority to direct medical staff to grant an exemption. And the policy that a lay person may not grant a black box exemption makes sense because whether a particular medical condition warrants an exemption would not be obvious to a lay person. Indeed, as was mentioned in this case, over several years, different medical professionals came to differing conclusions as to whether Stewart's medical condition at that particular time warranted an exemption. And contrary to Stewart's argument in his reply brief that Steele forfeited this ground for summary judgment, the district court relied on the lack of an underlying deprivation of rights in granting Steele summary judgment. And in his opening brief on appeal, Stewart did not challenge the district court's reliance on this ground, thereby forfeiting any possible forfeiture. In any event, Steele did not forfeit this ground for summary judgment. Do you think that the injunctive relief that was requested from defendant Steele is now moot? Yes, Your Honor. He was recently released from prison on electronic detention and as I explained in my notice to the court, he could be re-imprisoned only if he were to violate the conditions of his release or if he were to lose his host site. And I know that my opposing counsel discussed the loss of host site as something outside of his control, but from what I understand from the department, they explained to me that if he were to lose his host site, which is highly unlikely, he is placed with a cousin and his agent has checked in on him multiple times since he was released two weeks ago and that relationship is fine. If he were to lose his host site, he would be placed in a different host site and the department would try their best to exhaust any possible other place he could go other than prison, such as any halfway house that would be available. So it's highly speculative that he would be re-imprisoned either during his electronic detention or during his mandatory supervised release. So yes, the claim is moot. Even if it weren't moot, the district court properly granted summary judgment on the merits. There's no evidence from a medical professional that Stewart's medical condition will always preclude the use of a black box and that a permanent exemption is therefore necessary. And also if he were to be re-imprisoned in the future, he could request an exemption and a medical professional would decide in their medical judgment whether an exemption is required. So the claim is moot and lacks merit. Just out of my own curiosity, what's the alternative to the black box for those with medical exemptions? Do they simply go without it? Sorry, I cannot hear you. Oh, I'm sorry. My understanding is that the alternative that Stewart had requested was the use of a leather belt that his handcuffs would be connected to, but I'm not certain that the record reflects exactly what the alternative would be in this case, but it could be that my opponent could clarify that. But turning back to the individual capacity claim against Mr. Steele, even had Stewart shown a constitutional deprivation by Dr. Chamberlain in denying him an exemption, there's no evidence that Steele had sufficient notice of any such underlying deprivation such that he was required to intervene. None of the evidence that Stewart relied on at summary judgment, such as the conversation, the letters or the grievance were put Steele on notice of an obviously serious medical need such that even a lay person would need to intervene. Firstly, the non-emergency grievance that he cited, the district court found that that grievance was processed through the prison's normal grievance process and Stewart does not dispute this finding, which makes sense because he introduced that evidence at summary judgment while represented by counsel. To the extent that he suggests in his reply brief that Steele should have also gone outside of the normal grievance process to respond to that grievance, he never made any such argument and there was no evidence that the normal grievance process wasn't working properly. If this court were to require prison officials to act in that sort of way, that would undermine prison staff's ability to manage and make concerns efficiently through an efficient division of labor. He next relies on a brief seconds long conversation in which he asked Steele about him not receiving a black box exemption, but that conversation lacked any detail that would have required Steele to intervene. And then when it comes to the four letters that he allegedly sent to Steele, stating that he was in enormous pain, the district court properly exercised its discretion in finding no evidence that Steele received those letters because the fact that the letters had allegedly been mailed through the prison mail system did not appear in any of the statements of fact at summary judgment required by the local rules. And the district court has to be able to enforce its, to exercise its discretion to enforce its local rules. And regardless, even if the court should have looked at those letters, which were not in the record, Stewart did not show that the letters had suggested that the grievance process was inadequately addressing his January, 2017 grievance. And given his admission at summary judgment that Steele was aware of the grievance and the evidence that the grievance was properly, properly being processed through the normal grievance process, a reasonable jury could not find that Steele was deliberately indifferent by not also responding to those letters. At most, perhaps a jury could find negligence on Steele's part. So for these reasons, I ask this court to affirm the district court's judgment, granting summary judgment to defendant Apolice Steele. Thank you. Thank you. Ms. Remke. Yes, Your Honor. I'll just address a couple of the issues that were raised by the defendants. With respect to Wexford and the discussion about whether Mr. Stewart can or cannot suffer based on the medical evidence, the extreme pain that he testified he suffered, that is the definition of a question of fact that the trier of fact is entitled to resolve in this case, not the district court on summary judgment. I think that's important to emphasize here. There is conflicting evidence in the record as to whether that's possible. Also, the point about whether the fact that some providers granted Mr. Stewart a black box exemption and some providers did not grant Mr. Stewart a black box exemption, that's also evidence that the providers were making arbitrary decisions about when his conditions, which no one disputes, did not change, nor did the pain that he claimed to have suffered from wearing the black box change. That is also evidence that there was confusion about who was entitled to it or not. And based on that evidence, a reasonable jury could conclude that Wexford, with that knowledge, had to do something more than just leave it up to their medical providers to make that decision. And that policy of inaction is evidence that would allow a reasonable jury to find that Wexford was deliberately indifferent. With respect to Mr. Steele's claims, first of all, Mr. Stewart is not asking that Mr. Steele intervene to grant him a black box exemption. What the case law requires Mr. Steele to do is something, consult with his providers if he's aware that the complaints of an inmate aren't being addressed. And the case law, like Barry, for example, is, excuse me, like Rice and Reed, that we cited in our briefs, is instructive to that. And so that's the failure to intervene we're saying is a constitutional violation. And that's the inaction that Mr. Stewart claims is the issue for Mr. Steele. We also submit that the evidence about Mr. Stewart sending the four letters to Mr. Steele was in the record. There was testimony that Mr. Stewart sent those letters to Mr. Steele. And even though Mr. Steele disputes having received them, that's again, a question of fact, a dispute of fact. And the trial court at the summary judgment stage was required to provide, to view that evidence in the light most favorable to Mr. Steele, or Mr. Stewart, excuse me, and treat that as evidence of his knowledge of Mr. Stewart's issues and concerns. And with respect to the alternatives available to Mr. Stewart for wearing the black box, it's my understanding from the record that one option was the leather belt that was proposed. The other option was simply to just use handcuffs, which allowed more range of motion because a prisoner is not placed in the twisted wrist position that keeps them in somewhat of an unnatural position for hours at a time. I see that my time is up. Unless your honors have other questions, we would respectfully request the district court's grant of summary judgment in favor of the defendants be reversed. Thank you very much. Our thanks to all counsel. The case is taken under-